**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

|  |  |  |
|---|---|---|
| PETRO-HUNT, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Nos. 00-512L; 11-775L |
| v. | ) | Honorable Marian Blank Horn |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF APPEAL

Notice is hereby given that Petro-Hunt, L.L.C. hereby appeals to the United States Court of Appeals for the Federal Circuit the following opinions and judgments in the above named consolidated cases, No. 00-512 and No. 11-775:

(a)    the Court of Federal Claims' Opinion in Case No. 00-512 entered on November 6, 2009 granting Defendant's Motion to Dismiss Petro-Hunt, L.L.C.'s Complaint (Dkt. No. 77);

(b)    the Court of Federal Claims' Order in Case No. 00-512 entered on November 30, 2009 denying Plaintiff's Motion for Reconsideration (Dkt. No. 80);

(c)    the Court of Federal Claims' Opinion in Case No. 00-512 entered on May 2, 2012 granting the Defendant's Motion to Dismiss Petro-Hunt, L.L.C.'s Complaint (Dkt. No. 125);

(d)    the Court of Federal Claims' Opinion/Order in Case No. 00-512 entered on May 30, 2012 denying Plaintiff's Motion for Reconsideration (Dkt. No. 127);

(e)    the Court of Federal Claims' Opinion in Case No. 00-512 entered on Dec. 19, 2013 denying Plaintiff's Motion to Compel (Dkt. No. 184);

(f)      the Court of Federal Claims' Order and Final Judgment in Case No. 00-512 entered on Feb. 29, 2016 granting Defendant's Motion to Dismiss Petro-Hunt, L.L.C.'s Complaint (Dkt. No. 222 and Dkt. No. 223);

(g)      the Court of Federal Claims' Order and Final Judgment in Case No. 11-775 filed on Feb. 29, 2016 granting Defendant's Motion to Dismiss Petro-Hunt, L.L.C.'s Complaint (Dkt. No. 24 and Dkt. No. 25); and

(h)      all other rulings of the Court of Federal Claims in either case that are adverse to Plaintiff.

Respectfully submitted this the 25th day of April, 2016,

*Attorneys for Petro-Hunt, L.L.C.*

/s/ J. Ralph White
J. Ralph White
*Counsel of Record*
Stella C.C. Shackelford
Sharon L. Andrews
WHITE ANDREWS & SHACKELFORD, LLC
650 Poydras Street, Suite 2319
New Orleans, Louisiana 70130
Telephone: 504-799-2585
Facsimile: 504-799-2586
E-Mail: ralph@whiteandrews.com

*Of Counsel:*

Edmund M. Amorosi
D. Joe Smith
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
E-Mail:  eamorosi@smithpachter.com
E-Mail:  jsmith@smithpachter.com

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that on this 25th day of April 2016, this *Petro-Hunt, L.L.C.'s Notice of Appeal* was filed electronically.  I understand that notice of this filing will be sent to counsel for the Defendant automatically by operation of the Court's electronic case filing system.  Parties may access this filing through the Court's electronic case filing system.

/s/ J. Ralph White

APPEAL,CLOSED,ECF

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:11-cv-00775-MBH
### Internal Use Only

PETRO-HUNT, L.L.C. v. USA
Assigned to: Judge Marian Blank Horn
Demand: $65,633,000
Cause: 28:1491 Tucker Act

Date Filed: 11/17/2011
Date Terminated: 02/29/2016
Jury Demand: None
Nature of Suit: 512 Taking - Realty
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**PETRO-HUNT, L.L.C.**

represented by **Joseph Ralph White**
White Law Firm
650 Poydras Street
Suite 1605
New Orleans, LA 70130
(504) 799-2585
Fax: (504) 799-2586
Email: jralphwhitepllc@bellsouth.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**USA**

represented by **William James Shapiro**
U.S. Department of Justice
Environment & Natural Resources
Division
501 I Street
Room 9-700
Sacramento, CA 95814
(916) 930-2207
Fax: (916) 930-2210
Email: william.shapiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/26/2016 | 28 | REPORTED OPINION. Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 04/26/2016) |

| 04/25/2016 | | 27 | NOTICE OF APPEAL as to 24 Order on Motion to Dismiss - Rule 12(b)(1) and (6), Order Dismissing Case, 25 Judgment, filed by PETRO-HUNT, L.L.C.. Filing fee $ 505, receipt number 9998-3301578. Copies to judge, opposing party and CAFC. (White, Joseph) (Entered: 04/25/2016) |
| --- | --- | --- | --- |
| 03/02/2016 | | 26 | ORDER: **Joint Status Report on Redactions due by 3/14/2016.** Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 03/02/2016) |
| 02/29/2016 | | 25 | JUDGMENT entered, pursuant to Rule 58, dismissing plaintiff's complaint. (Copy to parties) (dls) (Entered: 02/29/2016) |
| 02/29/2016 | 🔒 | 24 | **SEALED** ORDER granting 12 Motion to Dismiss. Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 02/29/2016) |
| 11/03/2015 | | 23 | ORDER: **Submissions due by 11/6/2015.** Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 11/03/2015) |
| 11/03/2015 | | | Minute Entry - Was the proceeding sealed to the public? no. Proceeding held in Washington, DC on 11/3/2015 before Judge Marian Blank Horn: Oral Argument. [Total number of days of proceeding: 1]. Official record of proceeding taken by court reporter. To order a certified transcript or an audio copy of the proceeding (click HERE) (jm5) (Entered: 11/03/2015) |
| 07/29/2015 | | 22 | ORDER Case Numbers 00-512L and 11-775L are CONSOLIDATED for case management purposes. Signed by Judge Marian Blank Horn. (es) Copy to parties. (Entered: 07/29/2015) |
| 07/23/2015 | | 21 | ORDER: **Submissions due by 7/28/2015.** Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 07/23/2015) |
| 07/22/2015 | | | Minute Entry - Was the proceeding sealed to the public? no. Proceeding held in Washington, DC on 7/21/2015 before Judge Marian Blank Horn: Status Conference. [Total number of days of proceeding: 1]. Proceeding was not officially recorded. (jm5) (Entered: 07/22/2015) |
| 07/09/2015 | | 20 | ORDER: **Status conference set for 7/21/2015.** Signed by Judge Marian Blank Horn. (ss) Copy to parties. (Entered: 07/09/2015) |
| 07/01/2015 | | 19 | ORDER: **Status conference rescheduled for 7/14/2015, 2:30 PM.** Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 07/01/2015) |
| 07/01/2015 | | 18 | ORDER: **Status conference set for 7/7/2015, 4:30 PM.** Signed by Judge Marian Blank Horn. (jm5) Copy to parties. (Entered: 07/01/2015) |
| 06/23/2015 | | 17 | NOTICE of Reassignment. Case reassigned to Judge Marian Blank Horn for all further proceedings. Judge Francis M. Allegra no longer assigned to the case. (ar) (Entered: 06/24/2015) |
| 06/23/2015 | | 16 | ORDER DIRECTING THE CLERK TO RANDOMLY REASSIGN CASE PURSUANT TO RULE 40.1(c) Signed by Chief Judge Patricia E. Campbell-Smith. (lld) Copy to parties. (Entered: 06/23/2015) |

| 04/19/2013 | 15 | Rule 7.1 Disclosure Statement *Supplemental*, filed by PETRO-HUNT, L.C.C.. (White, Joseph) (Entered: 04/19/2013) |
| 06/25/2012 | 14 | See 06/25/2012 ORDER in 00-512L re: no further motions to dismiss, discovery schedule, and briefing on defendant's motion to dismiss remains sayted. (jt1) Copy to parties. (Entered: 07/23/2012) |
| 06/05/2012 | 13 | ORDER STAYING CASE. **Joint Status Report due by 6/22/2012.** Signed by Judge Francis M. Allegra. (si) Copy to parties. (Entered: 06/05/2012) |
| 01/31/2012 | | ORDER: staying further briefing re: 12 motion to dismiss, until further order. Signed by Judge Francis M. Allegra. (si) Copy to parties. (Entered: 01/31/2012) |
| 01/17/2012 | 12 | MOTION to Dismiss pursuant to Rules 12(b)(1) and (6), filed by USA.**Response due by 2/17/2012.**(Shapiro, William) (Entered: 01/17/2012) |
| 12/16/2011 | 11 | ORDER granting, part 2 Motion to Stay. **Defendant shall file its response to plaintiff's complaint by 1/17/2012. All other proceedings in this case are stayed until further order. Signed by Judge Francis M. Allegra. (si) Copy to parties. (Entered: 12/16/2011)** |
| 12/15/2011 | 10 | REPLY to Response to Motion re 2 MOTION to Stay case *Upon Filing*, filed by PETRO-HUNT, L.C.C.. (White, Joseph) (Entered: 12/15/2011) |
| 12/07/2011 | 9 | SPECIAL PROCEDURES ORDER. Signed by Judge Francis M. Allegra. (si) Copy to parties. (Entered: 12/07/2011) |
| 12/05/2011 | 8 | NOTICE of Appearance by William James Shapiro for USA. (Shapiro, William) (Entered: 12/05/2011) |
| 12/05/2011 | 7 | RESPONSE to 2 MOTION to Stay case, filed by USA.**Reply due by 12/15/2011.** (Shapiro, William) (Entered: 12/05/2011) |
| 11/17/2011 | 6 | NOTICE of Designation of Electronic Case. (ac7) (Entered: 11/18/2011) |
| 11/17/2011 | 5 | NOTICE of Assignment to Judge Francis M. Allegra. (ac7) (Entered: 11/18/2011) |
| 11/17/2011 | 4 | Rule 7.1 Disclosure Statement, filed by PETRO-HUNT, L.C.C.. (ac7) (Entered: 11/18/2011) |
| 11/17/2011 | 3 | NOTICE of Directly Related Case(s) [00-512], filed by PETRO-HUNT, L.C.C.. (ac7) (Entered: 11/18/2011) |
| 11/17/2011 | 2 | MOTION to Stay Case, filed by PETRO-HUNT, L.C.C..**Response due by 12/5/2011.**(ac7) (Entered: 11/18/2011) |
| 11/17/2011 | 1 | COMPLAINT against USA (DOI) (Filing fee $350, Receipt number 073026) (Copy Served Electronically on Department of Justice), filed by PETRO-HUNT, L.C.C..**Answer due by 1/17/2012.** (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1-5)(ac7) (Entered: 11/18/2011) |

# In the United States Court of Federal Claims
## Appeal Information Sheet

**Assigned to:**     Judge Marian Blank Horn

Referral Judge:

**Nature of Suit:**    512

**Type of Case**:    Taking - Realty

**PETRO-HUNT, LLC.,**
        *Plaintiff,*


        v.

**UNITED STATES,**
        *Defendant,*

---

**Docket No**.: 11-775 L.


**Cross or Related**:  No.


**Appellant is**: Plaintiff.


**Date Judgment Entered**:  February 29, 2016.


**Date of Appeal:**  April 25, 2016.


**Fee**:  $505.00.

---

*See docket sheet for defendant and plaintiff counsel representation information*

# In the United States Court of Federal Claims

### Nos. 00-512L, 11-775L
### Filed: February 29, 2016
### Reissued for Publication: April 26, 2016[1]

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *    *
PETRO-HUNT, L.L.C.,                        *
                                           *
                  Plaintiff,               *
           v.                              *        Takings; Judicial Takings
                                           *        Claim; Motion to Dismiss;
UNITED STATES,                             *        Subject-Matter Jurisdiction.
                                           *
                  Defendant.               *
                                           *
*  *  *  *  *  *  *  *  *  *  *  *  *  *    *
```

**Joseph R. White**, White Law Firm, New Orleans, LA, for plaintiff.

**William J. Shapiro**, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Sacramento, CA, for the defendant.  With him was **Emily M. Meeker**, Trial Attorney, Natural Resources Section, and **John C. Cruden**, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

# O P I N I O N

<u>**HORN, J.**</u>

The above captioned cases involve the government's alleged taking in violation of the Fifth Amended to the United States Constitution of ninety mineral servitudes underlying roughly 58,000 acres of the Kisatchie National Forest in Louisiana.  Plaintiff alleges that the United States Court of Appeals for the Fifth Circuit took its property by holding that the mineral servitudes were subject to the Louisiana law of prescription. <u>See</u> <u>Petro-Hunt, L.L.C. v. United States</u>, 365 F.3d 385 (5th Cir.), <u>cert.</u> <u>denied</u>, 543 U.S. 1034 (2004). These cases are currently before this court on defendant's motion to dismiss

_____

[1] This opinion was issued under seal on February 29, 2016. The parties filed a joint status report indicating no redactions were required. After subsequent review of the opinion by the court, the court agrees no redactions are warranted, and, therefore, the opinion is hereby unsealed and reissued without redaction.

plaintiff's judicial takings claims and the parties' cross motions for summary judgment on the judicial takings claims.[2]

## FINDINGS OF FACT

Between 1932 and 1934, two companies, Bodcaw Lumber Company of Louisiana (Bodcaw) and Grant Timber & Manufacturing Company of Louisiana, Inc. (Grant), conveyed 96 mineral servitudes underlying approximately 180,000 acres of land to Good Pine Oil Company, Inc., a joint venture created by Bodcaw, Grant, and three other lumber companies.

In the early 1930s, the United States approached Bodcaw and Grant with an offer to purchase the surface land of the 180,000 acres. The United States intended to acquire this land pursuant to the Weeks Law, which authorized the government to purchase lands throughout the United States to establish national forests. See Weeks Law of 1911, ch. 186, 36 Stat. 961 (1911) (codified as amended at 16 U.S.C. §§ 515–519, 521, 552, 563 (2012)). Bodcaw and Grant expressed concern over the application of the Louisiana law of prescription, which states that mineral servitudes to the owner of the surface estate extinguish after ten years of nonuse. See La. Civil Code art. 789, 3546 (1870) (currently codified as amended at La. Rev. Stat. § 31:27 (2015)). On May 29, 1935, an Assistant Solicitor of the United States Department of Agriculture issued an opinion stating that the prescriptive provisions of the Louisiana Civil Code would not apply to lands sold to the United States for national forest purposes. The Forest Service delivered the 1935 opinion to Bodcaw and Grant to ease their fears that the land would prescribe to the United States. Between 1934 and 1937, the two companies conveyed the surface land of the 180,000 non-contiguous acres to the United States through several conveyances for the creation of the Kisatchie National Forest.[3]

---

[2] Judge Francis Allegra, the Judge previously assigned to these cases, issued seven earlier opinions in Case No. 00-512L. See Petro-Hunt, L.L.C. v. United States, 114 Fed. Cl. 143 (2013); Petro-Hunt, L.L.C. v. United States, 113 Fed. Cl. 80 (2013); Petro-Hunt, L.L.C. v. United States, 108 Fed. Cl. 398 (2013); Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. 132 (2012); Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. 37 (2012); Petro-Hunt, L.L.C. v. United States, 91 Fed. Cl. 447 (2010); Petro-Hunt, L.L.C. v. United States, 90 Fed. Cl. 51 (2009). The court includes only the findings of fact relevant to this opinion in order to address the pending motions.

[3] As Judge Allegra previously noted: "The eleven instruments of transfer all expressly excluded the mineral servitudes, which the grantors reserved for Good Pine Oil, a joint venture created by Bodcaw Lumber, Grant Timber, and three other lumber companies." Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. at 40.

In 1940, the Louisiana legislature enacted Act 315 of 1940 (Act 315), declaring that when the United States acquired land subject to the prior sale of the oil, gas or other mineral rights, the mineral rights were imprescriptible.[4]  In 1948, the United States filed a quiet title action in the United States District Court for the Western District of Louisiana to determine the owner of a mineral servitude underlying approximately 800 acres of the 180,000 acres in dispute in these cases. The court held, relying on Act 315, that the Louisiana law of prescription did not apply and the servitude affecting the approximately 800 acres remained in the hands of Petro-Hunt's predecessor in interest, the Nebo Oil Company.[5]  See United States v. Nebo Oil Co., 90 F. Supp. at 84.  Although Act 315 was passed four years after the sale of the land above the servitude affecting the approximately 800 acres, the Western District of Louisiana found that the law still applied because the conveyance occurred within ten years of Act 315. See id. at 81.

The holding of Nebo Oil came into question when the United States Supreme Court decided United States v. Little Lake Misere Land Co., 412 U.S. 580 (1973). The Little Lake Misere case involved two parcels of land in Louisiana acquired by the United States in 1937 and 1939 in accordance with the Migratory Bird Conservation Act, with the express provision that the mineral rights associated with the land were reserved to Little Lake Misere for a period of 10 years, or longer if Little Lake Misere continued the production of minerals on the site. See id. at 582–83. The Supreme Court determined that because the land acquisition was "one arising from and bearing heavily upon a federal regulatory program" and involved the United States as a party, the case should be interpreted according to federal law. See id. at 593–94. The Supreme Court held that the retroactive application of Louisiana's Act 315 was "plainly hostile to the interests of the United States" and "[t]o permit state abrogation of the explicit terms of a federal land acquisition would deal a serious blow to the congressional scheme contemplated by the Migratory Bird Conservation Act and indeed all other federal land acquisition programs." Id. at 596–97.  Accordingly, the Supreme Court held that the land in question had prescribed to the United States. See id. at 604.

---

[4] The relevant part of Act 315 provides: "Be it enacted by the Legislature of Louisiana, That when land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm or corporation, and by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, and/or other minerals or royalties, still in force and effect, said rights so reserved or previously sold shall be imprescriptible." United States v. Nebo Oil Co., 90 F. Supp. 73, 80 (W.D. La. 1950) (quoting Act 315 (codified as amended at La. Rev. Stat. Ann. § 31:149)), aff'd, 190 F.2d 1003 (5th Cir. 1951).

[5] In 1942, Nebo Oil Company acquired all of the mineral rights formerly held by Good Pine Oil Company, Inc.

3

In 1991, the United States began granting mineral leases on some of the conveyed land at issue in these cases.  In 1998, through various conveyances, Petro-Hunt became the record holder of a 64.3% undivided interest in the mineral servitudes once owned by Good Pine Oil Company, Inc.  On February 18, 2000, Petro-Hunt, along with the co-owners of Petro-Hunt's mineral estate, filed a quiet title action in the United States District Court for the Western District of Louisiana, seeking a declaration that they were the owners in perpetuity of the mineral servitudes.  See Petro-Hunt, L.L.C. v. United States, No. 00-303 (W.D. La. filed Feb. 18, 2000).  Their complaint requested a declaratory judgment quieting their title to the property, but alternatively asserted "that the actions of the United States in confiscating their mineral interests amounts to an unconstitutional taking in direct violation of the Fifth Amendment of the United States Constitution, for which Plaintiffs should be compensated." In its June 5, 2000, response to this complaint, the United States asserted that the United States District Court for the Western District of Louisiana lacked jurisdiction to declare an unconstitutional takings and award compensation.

On August 24, 2000, Petro-Hunt filed a complaint in this court, Case No. 00-512L, alleging that the United States had breached its contract and the Fifth Amendment Takings Clause by exercising ownership over the mineral servitudes.  On November 2, 2000, the case in this court was stayed pending the resolution of the quiet title action in the United States District Court for the Western District of Louisiana. On December 18, 2001, the Western District of Louisiana held that the law of prescriptions did not apply and that Petro-Hunt retained title to the mineral servitudes.  Petro-Hunt, L.L.C. v. United States, 179 F. Supp. 2d 669 (W.D. La. 2001).  The United States Court of Appeals for the Fifth Circuit reversed, holding that the law of prescriptions did apply to Petro-Hunt's mineral servitudes.  See Petro-Hunt, L.L.C. v. United States, 365 F.3d at 399. In its ruling, the Fifth Circuit expressly relied upon the Little Lake Misere decision and a 2001 Fifth Circuit decision, Central Pines Land Co. v. United States, 274 F.3d 881 (5th Cir. 2001), cert. denied, 537 U.S. 822 (2002).  See Petro-Hunt, L.L.C. v. United States, 365 F.3d at 392–93 (discussing the two cases).  Central Pines held that "Act 315 cannot be borrowed as the rule of decision for application to pre-1940 transactions, because it is hostile to the interests of the United States." Cent. Pines Land Co. v. United States, 274 F.3d at 886.[6]

_____

[6] The Central Pines case addressed the seemingly contrary precedent of Nebo Oil, and determined that Nebo Oil's limited holding only addressed the constitutionality of Act 315 under the Contract Clause of the United States Constitution and the Due Process Clause of the Fourteenth Amendment.  See Cent. Pines Land Co. v. United States, 274 F.3d at 889 ("Nebo Oil holds only that the 'mere hope' or 'expectancy' in the prescription of mineral rights is not protected by the Contract Clause of the U.S. Constitution, and that the retroactive application of Act 315 does not violate the Due Process Clause of the Fourteenth Amendment or dispose of United States property in violation of Article IV, Section 3, clause 2." (footnote omitted)). Therefore, Little Lake Misere's holding that Act 315 could not be applied as a matter of federal common law did not necessarily overrule the constitutional analysis of Nebo Oil, although it did "reject[] the presumption in Nebo

Relying on Central Pines, the Fifth Circuit held that it was "prohibited from borrowing Act 315 as the federal rule of decision" and remanded the case United States District Court for the Western District of Louisiana to determine which of Petro-Hunt's mineral servitudes had prescribed to the United States through nonuse. Petro Hunt, L.L.C. v. United States, 365 F.3d at 399.

In accordance with the Fifth Circuit decision, the quiet title action was remanded to the United States District Court for the Western District of Louisiana. Petro-Hunt filed a motion for trial on the issue of whether Act 315 applied to its mineral servitudes. See Petro-Hunt, L.L.C. v. United States, No. 00-0303 (W.D. La. Mar. 14, 2005). The court denied the motion, finding that the only issue to be determined was "which of the 95 servitudes not at issue in Nebo Oil ha[d] in fact prescribed for nonuse." Order, Petro-Hunt, L.L.C. v. United States, No. 00-0303 (W.D. La. Nov. 21, 2005) (internal quotation marks omitted). On December 7, 2005, the United States District Court for the Western District of Louisiana held that Petro-Hunt remained the owner of six servitudes,[7] underlying roughly 122,000 acres, with the remaining 90 having prescribed to the United States through nonuse. Petro-Hunt, L.L.C. v. United States, No. 00-0303 (W.D. La. Dec. 7, 2005).

Petro-Hunt appealed, arguing that the United States District Court for the Western District of Louisiana erred in denying its motion for trial, or in the alternative, that the Fifth Circuit's 2004 mandate was clearly erroneous and should be withdrawn. See Petro-Hunt, L.L.C. v. United States, No. 06-30095, 2007 WL 715270, at *1 (5th Cir. Mar. 6, 2007), cert. denied, 552 U.S. 1242 (2008). On March 6, 2007, the Fifth Circuit affirmed the denial of the motion for trial and denied plaintiff's request that the previous mandate be withdrawn. Id. at *3. On March 3, 2008, the Supreme Court denied plaintiff's petition for a writ of certiorari, rendering the Fifth Circuit's decision final. See Petro-Hunt, L.L.C. v. United States, 552 U.S. 1242 (2008).

On May 27, 2008, the stay in Case No. 00-512L in this court was lifted. On September 2, 2008, defendant filed a motion to dismiss, or, alternatively, for summary judgment. On November 6, 2009, Judge Allegra granted, in part, and denied, in part, defendant's motion to dismiss. Petro-Hunt, L.L.C. v. United States, 90 Fed. Cl. 51. Judge

---

Oil that Louisiana law governed the terms of the transactions at issue." Petro-Hunt, L.L.C. v. United States, 365 F.3d at 393 (citing Cent. Pines Land Co. v. United States, 274 F.3d at 889–90) (footnote omitted).

[7] This decision specifically addressed five servitudes, which had not prescribed because they had been maintained by drilling or production activities. The sixth servitude is the Nebo Oil servitude, which had not prescribed to the United States because of the res judicata effect of the Nebo Oil decision. See Petro-Hunt, L.L.C. v. United States, 365 F.3d at 397 (holding that the res judicata effect of Nebo Oil only extends to the particular servitudes at issue in that case).

Allegra dismissed plaintiff's contract claims, permanent takings claims, and certain of its temporary taking claims that were untimely, see id. at 64, 67, 68, but found that other temporary takings claims were timely. See id. at 71.

On September 16, 2010, plaintiff filed its second amended complaint, adding a claim that the Fifth Circuit's decision in the quiet title action constituted a judicial taking of plaintiff's mineral servitudes. On May 31, 2011, defendant filed a motion to dismiss asserting that plaintiff's prior filing of the district court action deprived the court of jurisdiction under 28 U.S.C. § 1500 (2006). On May 2, 2012, Judge Allegra dismissed plaintiff's temporary takings claims as barred by 28 U.S.C. § 1500, but denied the motion to dismiss as to the new judicial takings claim. See Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. 37.[8]  The judicial takings claim is all that remains in the above captioned cases.

After discovery was completed in 2015, defendant filed a motion to dismiss pursuant to Rules 12(b)(1), 12(c), and 12(h)(3) (2015) of the Rules of the United States Court of Federal Claims (RCFC), and a motion for summary judgment pursuant to RCFC 56 (2015). Defendant raises four main arguments in support of its motions. First,

---

[8] Judge Allegra's earlier decision did not address whether the court had jurisdiction to consider the plaintiff's judicial takings claims, only that the judicial takings claims were not barred by 28 U.S.C. § 1500.  In his decision, Judge Allegra noted that:

> The Fifth Circuit's second decision was issued on March 6, 2007, and the Supreme Court's denial of certiorari was on March 3, 2008. Because these events occurred after the filing of plaintiff's original complaint, to the extent plaintiff's most recent complaint raises a judicial takings issue, it must be viewed not as an amended complaint under RCFC 15(c), but rather as a supplemental complaint under RCFC 15(d).

Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. at 44.  Judge Allegra also concluded that:

> [I]t makes little sense to hold, as defendant essentially suggests, that plaintiff's judicial takings claim is barred by section 1500 because that new count was added to a suit filed when the district court action was pending, but would not be barred if plaintiff chose to file a new suit featuring that count and then moved to consolidate that suit with this case. Critically, plaintiff's judicial takings claim rests upon "independent operative facts" that are not only unlike those in the first two complaints it filed in this case, but also unlike those that were operative in the claims that it originally pursued in the district court.

Petro-Hunt, L.L.C. v. United States, 105 Fed. Cl. at 45.

defendant argues that the United States Court of Federal Claims lacks jurisdiction over the judicial takings claim because it requires the court to scrutinize the decision of another federal court.  Second, defendant argues that the appropriate remedy for a judicial takings claim is the invalidation of the offending court decision, and the Court of Federal Claims lacks jurisdiction to grant this remedy. Third, defendant asserts that plaintiff's claim is barred by res judicata, because plaintiff already litigated its claims in the Fifth Circuit. Finally, defendant asserts that it should succeed on the merits because the Fifth Circuit did not take an established property right from the plaintiff.

In response, plaintiff filed a cross-motion for summary judgment in addition to responding to the motion to dismiss, alleging that it did have an established property right that was taken by the Fifth Circuit's 2007 decision. Regarding its judicial takings claims, plaintiff argues that "Petro-Hunt's valid judicial takings claim is subject to this Court's jurisdiction," and citing to Smith v. United States, 709 F.3d 1114 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013) argues that "[t]he Federal Circuit has recognized that judicial action can give rise to claims for the taking of private property."

## DISCUSSION

Prior to addressing the cross-motions for summary judgment, the court first considers defendant's motion to dismiss for lack of jurisdiction. It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be

7

raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506–07)); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506; <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. denied</u>, 545 U.S. 1127 (2005); and <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998))); <u>Pikulin v. United States</u>, 97 Fed. Cl. 71, 76, <u>appeal dismissed</u>, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise <i>sua sponte</i>, even where . . . neither party has raised this issue." <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1369 (Fed. Cir.) (citing <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1485 (Fed. Cir.), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir.), <u>cert. denied</u>, 525 U.S. 826 (1998)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.</u>, 546 U.S. 975 (2005), <u>cert. dismissed as improvidently granted</u>, 548 U.S. 124 (2006); <u>see also Avid Identification Sys., Inc. v. Crystal Import Corp.</u>, 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), <u>reh'g and reh'g en banc denied</u>, 614 F.3d 1330 (Fed. Cir. 2010), <u>cert. denied</u>, 5 U.S. 1169 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2016); <u>see also Ashcroft v. Iqbal</u>, 556 U.S. 662, 677–78 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir.) (citing <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983)), <u>reh'g denied</u> (Fed. Cir. 1997); <u>see also Klamath Tribe Claims Comm. v. United States</u>, 97 Fed. Cl. 203, 208 (2011); <u>Gonzalez-McCaulley Inv. Grp., Inc. v. United States</u>, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1322 (Fed. Cir. 1998); <u>see also McZeal v. Sprint Nextel Corp.</u>, 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, <u>Federal Practice and Procedure</u> § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" <u>Three S Consulting v. United States</u>, 104 Fed. Cl. 510, 523 (2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555), <u>aff'd</u>, 562 F. App'x 964 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2014). As stated in <u>Ashcroft v. Iqbal</u>, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1116; RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages

against the United States."); <u>Golden v. United States</u>, 118 Fed. Cl. 764, 768 (2014). In <u>Ontario Power Generation, Inc. v. United States</u>, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." <u>Eastport S.S. [Corp. v. United States</u>, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting <u>Clapp v. United States</u>, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." <u>Eastport S.S.</u>, 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." <u>Id.</u>; <u>see</u> <u>also</u> [<u>United States v. ]Testan</u>, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting <u>Eastport S.S.</u>, 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

<u>Ontario Power Generation, Inc. v. United States</u>, 369 F.3d 1298, 1301 (Fed. Cir. 2004); <u>see</u> <u>also</u> <u>Twp. of Saddle Brook v. United States</u>, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" <u>United States v. Navajo Nation</u>, 556 U.S. at 290 (quoting <u>United States v. Testan</u>, 424 U.S. 392, 400 (1976)); <u>see</u> <u>also</u> <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. at 472; <u>United States v. Mitchell</u>, 463 U.S. at 217; <u>Blueport Co., LLC v. United States</u>, 533 F.3d 1374, 1383 (Fed. Cir. 2008), <u>cert.</u> <u>denied</u>, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. <u>See</u> <u>United States v. Navajo Nation</u>, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims

premised on other sources of law (*e.g.*, statutes or contracts).""). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V.  The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 130 S. Ct. 1501 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified").

Therefore, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. at 520 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984)); see also Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1336 (Fed. Cir. 2007); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (quoting United States v. Causby, 328 U.S. 256, 267 (1946)); see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1368 (Fed. Cir. 2005); Narramore v. United States, 960 F.2d 1048, 1052 (Fed. Cir. 1992); Perry v. United States, 28 Fed. Cl. 82, 84 (1993).

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006).  "The issue of whether a taking has occurred is a question of law based on factual underpinnings."  Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008).  The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking.  See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005).  A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings.  Then, the court must determine whether the government action is a "'compensable taking of that property interest.'"  Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2459 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002) and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)).  Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) and M & J Coal Co. v. United States, 47 F.3d at 1154).  The court does not address the second step "without first identifying a cognizable property interest."  Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381 and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005).  Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue

amounted to a compensable taking of that property interest.'" <u>Huntleigh USA Corp. v. United States</u>, 525 F.3d at 1378 (quoting <u>Am. Pelagic Fishing Co. v. United States</u>, 379 F.3d at 1372).

<u>Judicial Takings</u>

The contours—and even the existence—of a judicial takings doctrine has been debated in federal courts and in legal scholarship. <u>See generally Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.</u>, 560 U.S. 702 (2010); Frederic Bloom & Christopher Serkin, "Suing Courts," 79 U. Chi. L. Rev. 553, 555 (2012); Stacey L. Dogan & Ernest A. Young, "Judicial Takings and Collateral Attack on State Court Property Decisions," 6 Duke J. Const. L. & Pub. Pol'y 107, 112–13 (2011); John D. Echeverria, "Stop the Beach Renourishment: Why the Judiciary is Different," 35 Vt. L. Rev. 475 (2010); Daniel L. Siegel, "Why We Will Probably Never See a Judicial Takings Doctrine," 35 Vt. L. Rev. 459 (2010); Barton H. Thompson, Jr., "Judicial Takings," 76 Va. L. Rev. 1449 (1990).

The door to judicial takings claims was cracked ajar by the Supreme Court's decision in <u>Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection</u>. <u>See generally Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.</u>, 560 U.S. 702. In <u>Stop the Beach</u>, a group of beachfront landowners from the city of Destin and Walton County, Florida, alleged that the Supreme Court of Florida took their property when it held that the Beach and Shore Preservation Act of 1961 did not unconstitutionally deprive landowners of their littoral rights without just compensation. <u>See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.</u>, 560 U.S. at 709–12. The eight justices who took part in the case[9] held that the Florida Supreme Court's decision did not constitute a violation of the Fifth Amendment Takings Clause "[b]ecause the Florida Supreme Court's decision did not contravene the established property rights of petitioner's Members." <u>Id.</u> at 733 (majority opinion). Specifically, the majority opinion found that "[t]here is no taking unless petitioner can show that, before the Florida Supreme Court's decision, littoral-property owners had rights to future accretions and contact with the water superior to the State's right to fill in its submerged land." <u>Id.</u> at 730.

The justices, however, did not agree on the definition of a judicial taking, or even whether judicial takings claims are cognizable in federal court. The plurality opinion by Justice Scalia, which was joined by Chief Justice Roberts, Justice Thomas, and Justice Alito, asserted that courts can violate the Fifth Amendment through their actions, since "[t]he [Takings] Clause is not addressed to the action of a specific branch or branches. It is concerned simply with the act, and not with the governmental actor." <u>Id.</u> at 713–14 (plurality opinion). The plurality determined that a successful judicial takings plaintiff "must prove the elimination of an established property right" by the judicial decision. <u>See id.</u> at 726.

---

[9] Justice John Paul Stevens recused himself from the case.

Justice Kennedy, joined by Justice Sotomayor, would have decided the case under the Due Process Clause of the Fourteenth Amendment, rather than the Takings Clause, and stated that it was unnecessary "to determine whether, or when, a judicial decision determining the rights of property owners can violate the Takings Clause of the Fifth Amendment of the United States Constitution." Id. at 733–37 (Kennedy, J., concurring in part and concurring in the judgment).  Justice Kennedy acknowledged that "[t]o announce that courts too can effect a taking when they decide cases involving property rights, would raise certain difficult questions." Id. at 737. Justice Kennedy feared that a judicial takings doctrine would give judges more power by allowing them to decide what property should or should not be taken and paid for by the government, a responsibility that the judiciary historically has not possessed. See id. at 738–39.  Additionally, "it may be unclear in certain situations how a party should properly raise a judicial takings claim" and what remedy courts are able to grant. See id. at 740–41.

Justice Breyer's concurrence, joined by Justice Ginsburg, found no unconstitutional taking had occurred and indicated it was unnecessary to decide whether courts could effect a taking or what would constitute a judicial taking.  See id. at 742–44 (Breyer, J., concurring in part and concurring in the judgment).  Justice Breyer shared some of the concerns expressed by Justice Kennedy about establishing a judicial takings doctrine, since it "would invite a host of federal takings claims without the mature consideration of potential procedural or substantive legal principles that might limit federal interference in matters that are primarily the subject of state law." Id. at 743.  In the end, a majority of the Supreme Court justices were only able to agree that if there could be such a thing as a judicial taking, the Florida Supreme Court decision under review was not one. See id. at 733 (majority opinion).

Since the Stop the Beach decision, courts have varied in their treatment of judicial takings claims.  Some courts, including the United States Court of Appeals for the Federal Circuit, have determined that judicial takings can exist, although without concluding that a judicial taking actually occurred. See Smith v. United States, 709 F.3d at 1116 ("In that case [Stop the Beach], the Court recognized that a takings claim can be based on the action of a court."); Vandevere v. Lloyd, 644 F.3d 957, 964 n.4 (9th Cir.) ("[A]ny branch of state government could, in theory, effect a taking." (citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. at 713–15 (plurality opinion))), cert. denied, 132 S. Ct. 850 (2011).  A number of courts faced with judicial takings claims have declined to address the question of whether a court can effect a taking, and have dismissed the claims on other grounds.  See, e.g., Bettendorf v. St. Croix Cnty., 631 F.3d 421, 435 n.5 (7th Cir. 2011) (declining to decide "whether a court decision can effect a compensable taking of property"); Allustiarte v. United States, 256 F.3d 1349, 1352 (Fed. Cir.) (finding that the court lacked jurisdiction over a judicial takings claim), cert. denied, 534 U.S. 1042 (2001); Weigel v. Maryland, 950 F. Supp. 2d 811, 837–38 (D. Md. 2013) ("The Court need not determine whether a judicial takings claim is constitutionally cognizable here, because

the Plaintiffs have failed to show a clear likelihood of success on their claim that a 'taking' has occurred in the first place."), appeal dismissed, (4th Cir. 2014).

Two United States Court of Appeals for the Federal Circuit decisions indicate that a court could effect a taking in violation of the Fifth Amendment, at least in theory. First, Boise Cascade Corporation v. United States held that the Court of Federal Claims had jurisdiction to consider a claim that a district court injunction took plaintiff's property rights, although the court went on to dismiss the claim as unripe. Boise Cascade Corp. v. United States, 296 F.3d 1339, 1344, 1357 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). More recently, the Federal Circuit in Smith v. United States stated that in Stop the Beach, "the Court recognized that a takings claim can be based on the action of a court" and that "it was recognized prior to Stop the Beach that judicial action could constitute a taking of property." Smith v. United States, 709 F.3d at 1116–17. The Federal Circuit went on to dismiss the judicial takings claim for violating the statute of limitations. See id. at 1117. This court finds that it is not necessary to determine if plaintiff's judicial takings claim is cognizable in federal court because, even if it is, the United States Court of Federal Claims lacks jurisdiction to determine if a judicial taking occurred in these cases.

The Federal Circuit has repeatedly held that the Court of Federal Claims lacks jurisdiction over judicial takings claims that require the court to scrutinize the decisions of other tribunals for the same plaintiff given the same set of facts.[10] See Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Innovair Aviation Ltd. v. United States, 632 F.3d 1336, 1344 (Fed. Cir.) ("[T]he Court of Federal Claims does not have jurisdiction to review the decision of district courts and cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted; brackets in original)), reh'g en banc denied, (Fed. Cir. 2011), cert. denied, 132 S. Ct. 999 (2012); Vereda Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)); Allustiarte v. United States, 256 F.3d at 1352 ("'[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.'" (quoting Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994))); see also Potter v. United States, 121 Fed. Cl. 168, 169 (2015);

---

[10] In a non-presidential opinion, the Federal Circuit also has indicated that "[t]he appellant [Barth] asked the Court of Federal Claims to scrutinize the actions of coordinate federal courts to determine whether their actions effected a taking of his property. That was beyond the Court of Federal Claims' jurisdiction." Barth v. United States, 76 F. App'x 944, 945–46 (Fed. Cir.), cert. denied, 540 U.S. 1049 (2003) (footnote omitted).

Martl v. United States,[11] No. 09-299, 2010 WL 369212, at *2 (Fed. Cl. Jan. 29, 2010) (unpublished) ("[T]his court has no jurisdiction over takings claims that are founded on a challenge to the judgment of another federal court.").

The most recent, precedential decision regarding judicial takings is Shinnecock Indian Nation v. United States decided by the United States Court of Appeals for the Federal Circuit in 2015. In Shinnecock, the Federal Circuit explained:

> Permitting parties aggrieved by the decisions of Article III tribunals to challenge the merits of those decisions in the Court of Federal Claims would circumvent the statutorily defined appellate process and severely undercut the orderly resolution of claims. See 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."); Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218–19, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995) (explaining

---

[11] The Martl case is related to a recent decision of the undersigned, Milgrom et al. v. United States, 122 Fed. Cl. 779 (2015), involving the same underlying facts as the Martl case. In the Milgroom case, this court determined:

> This court is without jurisdiction to review the alleged taking by the District Court, a judicial taking, see Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection et al., 560 U.S. 702 (2010), because review in this case of such a taking "would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake." Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015); see also Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."). Just as the Court of Federal Claims does not have jurisdiction to review the decisions of the United States District Courts, the Court of Federal Claims also does not have jurisdiction to review decisions of the United States Bankruptcy Courts. See Allustiarte v. United States, 256 F.3d 1349, 1351 (Fed. Cir. 2001) (holding that the Court of Federal Claims does not have jurisdiction to entertain judicial takings claims against federal bankruptcy courts because "[s]uch a determination would require the court to scrutinize the actions of the bankruptcy trustees and courts"), cert. denied, 534 U.S. 1042 (2001); Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals.").

Milgroom et al. v. United States, 122 Fed. Cl. at 801-802.

that Article III "gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy").

Shinnecock Indian Nation v. United States, 782 F.3d at 1353 (emphasis in original); see also Brace v. United States, 72 Fed. Cl. 337, 359 (2006) (finding that it would be "untenable" for the Court of Federal Claims to hear judicial takings claims because "it would constantly be called upon by disappointed litigants to act as a super appellate tribunal reviewing the decisions of other courts to determine whether they represented substantial departures from prior decisional law"), aff'd, 250 F. App'x 359 (Fed. Cir. 2007), cert. denied, 552 U.S. 1258 (2008).[12] Often, a judicial takings claim is brought as a "collateral attack" on the judgment of another tribunal.  See Shinnecock Indian Nation v. United States, 782 F.3d at 1353 (characterizing plaintiff's judicial takings claim as "an attempt to mount an improper collateral attack on the judgment of the district court"); Innovair Aviation Ltd. v. United States, 632 F.3d at 1344 ("[T]he trial court's finding that the bond amount was not just compensation is a collateral attack on the Arizona Court's approval of the bond amount."); Allustiarte v. United States, 256 F.3d at 1352 ("To permit collateral attacks on bankruptcy court judgments would 'seriously undercut[ ] the orderly process of the law.'" (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995))).[13]

---

[12] In an non-precedential decision, the United States Court of Appeals for the Federal Circuit also indicated:

> The Court of Federal Claims is a court of limited jurisdiction. It is vested with jurisdiction under the Tucker Act to adjudicate monetary claims against the United States founded upon the Takings Clause of the United States Constitution, Acts of Congress, regulations, or contracts, and requires a money mandating act to confirm jurisdiction. 28 U.S.C. § 1491(a)(1); United States v. Mitchell, 463 U.S. 206, 215–218 (1983). The Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994). It does not have jurisdiction to review the judgments of the United States district courts or circuit courts. Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1353 (Fed. Cir. 2015). We thus find no error in the Court of Federal Claims' conclusions that it lacks jurisdiction to review the judgments of the Eighth Circuit, and that Garcia has failed to allege a cause of action over which the court has subject matter jurisdiction.

Garcia v. United States, No. 2015-5099, 2015 WL 5845350, at *1 (Fed. Cir. Oct. 8, 2015).

[13] The Federal Circuit in Shinnecock noted that

> [t]he situation presented here parallels that presented in Allustiarte, 256 F.3d at 1351–53. There the plaintiffs brought suit in the Court of Federal

Based on these principles, the Court of Federal Claims and the Federal Circuit have rejected a variety of claims that required the court to review the decisions of another federal tribunal in a takings context. See, e.g., Shinnecock Indian Nation v. United States, 782 F.3d at 1348, 1352–53 (affirming a Court of Federal Claims decision, which barred plaintiff from amending its complaint to add a judicial takings claim because such a claim would be "futile"); Innovair Aviation Ltd. v. United States, 632 F.3d at 1344 (holding that the court lacked jurisdiction over plaintiff's "collateral attack" on an Arizona court's approval of a res bond); Barth v. United States, 76 F. App'x at 945–46 (ruling that the Court of Federal Claims lacked jurisdiction to determine whether a federal court's decision not to abate a nuisance constituted a taking); Vereda, Ltda. v. United States, 271 F.3d at 1375 (holding that the Court of Federal Claims lacked jurisdiction to review an in rem administrative forfeiture of property); Allustiarte v. United States, 256 F.3d at 1352 (holding that the Court of Federal Claims lacked jurisdiction to determine if a bankruptcy court effected a taking of the plaintiff's property by approving the bankruptcy trustee's alleged mishandling of assets); Joshua v. United States, 17 F.3d at 380 (affirming the dismissal of the plaintiff's claim that the dismissal of his earlier federal district court claim violated the Takings Clause); Martl v. United States, 2010 WL 369212, at *2 (dismissing for lack of jurisdiction where plaintiff claimed that a federal district court committed a taking when it issued a default judgment against her that required the sale of her property).

The case of Boise Cascade Corp. v. United States stands alone as the one case in which the Federal Circuit has found that the United States Court of Federal Claims did in fact have jurisdiction over a judicial takings claim. See Boise Cascade Corp. v. United

---

Claims alleging that bankruptcy courts in the Ninth Circuit took their property without just compensation when they allowed the plaintiffs' assets to be sold at less than fair value. Id. at 1350–51. The Court of Federal Claims dismissed the plaintiffs' suit for lack of jurisdiction and this court affirmed. We explained that the Court of Federal Claims was without authority to scrutinize the decisions of the bankruptcy courts (which are subordinate to Article III courts) and "to determine whether [the plaintiffs] suffered a categorical taking of their property at the hands of the . . . courts."

Shinnecock Indian Nation v. United States, 782 F.3d at 1352-53 (quoting Allustiarte v. United States, 256 F.3d at 1352). The Federal Circuit in Shinnecock noted that "[a] similar analysis applies here. The Nation alleges that in applying the doctrine of laches to bar its land claim, the district court improperly "took away the Nation's legal right to sue for compensation for its stolen land." The Court of Federal Claims, however, is without authority to adjudicate the Nation's claim that it suffered a compensable taking at the hands of the district court." Id. at 1353. The Federal Circuit concluded that "the Court [of Federal Claims] has no jurisdiction to review the decisions 'of district courts and cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal.'" Id. (quoting Innovair Aviation Ltd. v. United States, 632 F.3d at 1344).

States, 296 F.3d at 1344. The plaintiff in Boise Cascade Corp. alleged that a federal district court took its property when the court issued an injunction preventing Boise from logging on its land unless it obtained an Incidental Take Permit pursuant to the Endangered Species Act. See id. at 1341–42. The Federal Circuit ultimately dismissed the claim as unripe, but first it determined that the Court of Federal Claims could exercise jurisdiction. The Federal Circuit in Boise acknowledged that "Article III forbids the Court of Federal Claims, an Article I tribunal, from reviewing the actions of an Article III court." Id. at 1344 (citing Plaut v. Spendthrift Farm, Inc., 514 U.S. at 218–19). The Federal Circuit found, however, that:

> [R]esolution of this case did not require the Court of Federal Claims to review the merits of the district court's order enjoining Boise from logging without a permit.  Boise has accepted the validity of the injunction, and only filed suit in the Court of Federal Claims to determine whether the Service's assertion of jurisdiction over it by seeking and obtaining the injunction worked a taking of its property that requires compensation under the Takings Clause.  Whether or not the government action took Boise's property was not before the district court, nor could it have been.  Because Boise seeks over $10,000 in compensation for this alleged taking, the Court of Federal Claims is the sole forum available to hear Boise's claim.  See 28 U.S.C. § 1346(a)(2) (2000).  Because the takings claim does not require the trial court to review the district court's actions, there is no constitutional defect in the Court of Federal Claims' assertion of jurisdiction over this case.

Id. In addition to emphasizing that the Court of Federal Claims was not required to review the merits of the decision of the District Court, the Boise court sought to distinguish Boise's claim from other cases in which the Federal Circuit found that the Court of Federal Claims lacked jurisdiction to scrutinize the decisions of other tribunals, with particular focus on Allustiarte v. United States, 256 F.3d 1349 and Vereda, Ltda. v. United States, 271 F.3d 1367.  See Boise Cascade Corp. v. United States, 296 F.3d at 1344–45.

As noted above, in Allustiarte, several plaintiffs alleged that they suffered a taking at the hands of the bankruptcy courts in the Ninth Circuit.  See Allustiarte v. United States, 256 F.3d at 1350–51. Specifically, they alleged that the court-appointed bankruptcy trustee had mishandled their assets, and the bankruptcy court wrongfully approved the trustee's actions.  See id. The Federal Circuit held that the Court of Federal Claims lacked jurisdiction over the plaintiffs' claims because determining whether a judicial taking occurred "would require the court to scrutinize the actions of the bankruptcy trustees and courts," which the Court of Federal Claims lacks jurisdiction to do. Id. at 1352 (citing Joshua v. United States, 17 F.3d at 380).  In Vereda, the Federal Circuit similarly held that a mortgagee may not assert a Fifth Amendment taking claim in the Court of Federal Claims following the government's in rem administrative forfeiture of the property securing its mortgage. See Vereda, Ltda. v. United States 271 F.3d at 1396, 1375.

The <u>Boise</u> court held that "unlike in <u>Vereda</u> and <u>Allustiarte</u>, Boise's takings claim is not based on the propriety of the district court's decision, and the trial court therefore would not be called upon to review the merits of the district court's decision in order to decide the merits of Boise's claim." <u>Boise Cascade Corp. v. United States</u>, 296 F.3d at 1345.  Boise's challenge was not to the validity of the district court's injunction, but to the government's use of the courts to enforce the provisions of the Endangered Species Act and restrict the use of its land.  As the court noted, the fact that the government "chose to effectuate its mandate to enforce the ESA [Endangered Species Act] through a court action rather than through an agency cease and desist order, for instance, cannot insulate the United States from its duty to pay compensation that may be required by the Fifth Amendment." <u>Id.</u>

In the above captioned cases, the court must determine if Petro-Hunt's judicial takings claim requires the court to scrutinize the United States Court of Appeals for the Fifth Circuit's decision, or, like <u>Boise</u>, can be decided without the need to scrutinize the ruling of another tribunal.  This court finds that plaintiff's claim is not like <u>Boise</u>, and would require the court to scrutinize the decision of the Fifth Circuit.  Plaintiff's claim does not attack the discretionary action of a government agency, which chose to exercise its authority through the courts.  Instead, these cases are more like those that ask this court to review the decision of an "impartial judicial arbiter whose actions have been improperly appealed to the Court of Federal Claims." <u>Boise Cascade Corp. v. United States</u>, 296 F.3d at 1345. Indeed, deciding Petro-Hunt's current claim on the merits would require this court to determine if Petro-Hunt had an established property right that was taken by the Fifth Circuit.  <u>See</u> <u>Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.</u>, 560 U.S. at 715 (plurality opinion).  The only way to determine if Petro-Hunt had an established property right in the mineral servitudes is to decide whether the mineral servitudes had prescribed, as a matter of federal common law, to the United States prior to the Fifth Circuit's 2007 decision.  In other words, this court would have to determine if the Fifth Circuit was correct in its finding that <u>Little Lake Misere</u> and <u>Central Pines</u> established that lands sold to the United States before the enactment of Act 315, like the surface lands in question here, were subject to Louisiana's ten-year prescription rule.  <u>See</u> <u>Petro-Hunt, L.L.C. v. United States</u>, 365 F.3d at 392–93.  If the Fifth Circuit was correct in this finding, then Petro-Hunt lost possession of its land long before the 2007 Fifth Circuit decision and it had no established property right that could have been taken by the court's decision.  If the Fifth Circuit was incorrect in its application of precedent, and actually created a new rule depriving Petro-Hunt of its previously established property, then the Fifth Circuit may have effected a compensable taking of Petro-Hunt's mineral servitudes. This court lacks jurisdiction to determine whether or not the Fifth Circuit correctly interpreted its own precedent, and, therefore, lacks jurisdiction over plaintiff's judicial takings claim. <u>See</u> <u>Shinnecock Indian Nation v. United States</u>, 782 F.3d at 1348, 1352–53; <u>Allustiarte v. United States</u>, 256 F.3d at 1352.

In <u>Stop the Beach</u>, the majority of the Supreme Court made clear that "[t]here is no taking unless petitioner can show that, before the Florida Supreme Court's decision,

littoral-property owners had rights to future accretions and contact with the water superior to the State's right to fill in its submerged land." Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. at 730.  In deciding whether the petitioner had an established property right, the Court analyzed the challenged decision and determined that the Florida Supreme Court had reached the correct conclusion.  Id. at 730–33 (majority opinion) (holding that the Florida Supreme Court decision was consistent with the state's property law in finding that petitioner did not have the littoral rights).  Similarly, this court would have to analyze the correctness of the Fifth Circuit decision to rule on plaintiff's claim.  In Stop the Beach, the Supreme Court had the authority to scrutinize the decision of the Florida Supreme Court, as the case had properly been appealed to the Supreme Court for review.  See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 557 U.S. 903 (2009) (granting certiorari). The Court of Federal Claims, however, has no appellate authority over decisions of the Fifth Circuit and cannot undertake the type of review that the Supreme Court exercised in Stop the Beach.

Petro-Hunt, like the plaintiffs in Allustiarte and Martl, insists that the court does not have to scrutinize the decision of another tribunal, because plaintiff does not challenge whether or not the Fifth Circuit was correct.  Before this court, plaintiff claims that "the Court does not have to examine the propriety of a court's decision to resolve Petro-Hunt's takings claim." This language is similar to the Allustiarte plaintiffs' argument before the Court of Federal Claims, in which the Allustiarte plaintiffs claimed that they were "not seeking to avoid, defeat, or evade any judgment of a bankruptcy court," but only to obtain just compensation for the taking. Allustiarte v. United States, 46 Fed. Cl. 713 (2000), aff'd, 256 F.3d 1349 (Fed. Cir.), cert. denied, 534 U.S. 1042 (2001).  Likewise in Martl v. United States, the Martl plaintiff claimed that the case before the Court of Federal Claims was not a collateral attack against the district court judgment. The Martl court, however, found that "there is no other interpretation of her suit. Her complaint is replete with allegations of wrongdoing and errors of law committed by the district court to the exclusion of any other averred basis for relief." Martl v. United States, 2010 WL 369212, at *2.

Petro-Hunt's own submissions undercut the argument that it is not challenging the propriety of the Fifth Circuit's decision.  For example, plaintiff's response to the motion to dismiss frames this court's role as determining if the Fifth Circuit decisions "effectively transformed Petro-Hunt's private property into public property," and argues that the mineral servitudes were "imprescriptible" prior to the Fifth Circuit decision in 2007. Additionally, plaintiff argues that Nebo Oil should have controlled the outcome of the case, and argues that the Fifth Circuit's decision was incorrect, and claims that "[t]he ultimate result of the QTA [quiet title action] was inconsistent with the principles set forth in Nebo [Oil] and the other relevant principles applicable to Petro-Hunt's established property right and deprived Petro-Hunt of its ownership of the mineral servitudes in perpetuity." This court, however, cannot determine if plaintiff's mineral servitudes were "previously imprescriptible," or "transformed" from private to public property, without determining whether the Fifth Circuit's interpretation of precedent was correct. Because the court cannot determine whether the Fifth Circuit took plaintiff's property without scrutinizing the

21

Fifth Circuit's decision, the court lacks jurisdiction over plaintiff's claim. The court does not need to address the remaining arguments in defendant's motion to dismiss or the parties' cross motions for summary judgment.[14]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is hereby **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion in Case No. 00-512L and Case No. 11-775L.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**

---

[14] As conceded by plaintiff's counsel at oral argument, if the court grants defendant's motion for a lack of jurisdiction as a result of the judicial taking, both of plaintiff's cases should be dismissed.  Plaintiff's counsel stated, first "[i]f you rule against us on jurisdiction and the cause of action, then I would think you would dismiss both cases," and in response to a question from the bench reiterated, "if you dismiss for either lack of jurisdiction or if you hold there's no cause of action for a judicial taking, yes, you would dismiss both." Plaintiff retains all appeal rights regarding Judge Allegra's earlier decisions, as well as the ability to appeal this decision.

# United States Court of Appeals for the Federal Circuit



# <u>Key Rule Changes – April 2016</u>

Key changes to the Federal Circuit local rules are included below as a courtesy to assist you in perfecting your appeal. **Cases opened on or after April 1, 2016 must comply with the updated rules.** For complete details, please review the current rules and potential future changes by visiting the Court's online Rules and Notices pages at: www.cafc.uscourts.gov.

**Appeals, New** *Rule 12 - Practice Notes*: Clarifies that any objection to an official caption should be made ***promptly*** after docketing of the appeal.

**Briefs** *Rule 28 – Practice Notes:* Any party may place the language of a patent or claim at issue on the inside of the front cover of the brief; this duplicate language is not counted towards the word count.

**Certificate of Interest**
- *Rule 47.4(a) and (b):* Identify the parent corporation or any publicly held corporation that owns 10% or more of its stock for each party you represent (not as a group).
  - ONLY list the required law firms and the partners and associates that **are not already listed on the docket in the current case;**
  - When ownership, representation or contact information changes an updated COI must be filed when the change occurs.

**Citations**
- *Rule 28(a)(11) and 28(f):* Requires appendices, supplemental appendices and addendum material to be numbered using the abbreviation "Appx" or "SAppx" followed by the page number, and to be referenced in the briefs accordingly.
- *Rule 30(b)(4)(E):* Requires the use of Bates numbering for all pages of an appendix or supplemental appendix. Refer to the <u>Adding Bates Numbering Guide</u> available on the CM/ECF web page: http://www.cafc.uscourts.gov/cm/ecf/case-management/electronic-case-files.

**Confidential Material** *Rule 27(m) and Rule 28(d): N*o material in a motion, response, or reply shall be marked confidential – The exceptions are as follows: Each motion, response, or reply **may mark confidential up to fifteen (15) words** if the information (1) was treated in the matter under review as confidential pursuant to a judicial or administrative protective order and (2) such marking is authorized by statute, administrative regulation, or court rule (such as Federal Rule of Civil Procedure 26(c)(1)). A **50-word limit** applies in cases arising under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

**Copies, Number of -** The number of copies of briefs, appendices, motions, petitions for rehearing, and other documents are incorporated by reference Fed. Cir. R. 25.

> **Appendix, Preparing an** *Rule 30(a)(5) and 30(h):* Appendix required copies count reduced to 6 from 12.
>
> **Briefs** *Rule 31(b):* The number of paper copies of briefs for filing reduced to 6 from 12.
>
> **Petitions for Hearing or Rehearing En Banc** *Rule 35(c)(4) and (f):* Original copy is no longer required to be filed. A copy of the nonconfidential version is no longer required to be served on each party separately represented.

**Email Address:** The addition of a contact email address is required pursuant to *Rule15(a), Rule 47.3(b), Rule 47.3(c)(1)(2), Rule 46(e) and Rule 8(c).*

**Entry of Appearance (EOA)** *Rule 47.3:* If an attorney's entry of appearance is first submitted after a case is assigned to a merits panel, the appearance will be treated as a motion to appear. Counsel must immediately file an updated EOA if representation changes. This included a change in contact information. Electronic filers must also report a change in contact information to the PACER Service Center.

**Filing and Service** *Rule 25*: Incorporates the provisions of the May 2012 Administrative Order regarding electronic filing.

**Forms:** Review the new forms on the website at: www.cafc.uscourts.gov. Most of the forms have been updated, specifically forms 8 (Entry of Appearance) and 9 (Certificate of Interest – now, identify the real party in interest and/or parent per represented party, and; now, do not include the names of firms/ attorneys who are already on the docket).

**Oral Argument** *Rule 34 – Practice Notes:* Shortens the time to 7 days from notification by the Clerk's Office (via Notice of Docket Activity) that the case is fully briefed in which counsel must advise the Clerk's Office of schedule conflicts; Clarifies argument time per side (not per attorney).

**Service Rule** *25(e):* Three additional days are NOT added to the time to file a responsive document because the court considers service by email through CM/ECF to be delivered when transmitted.

**Statement Concerning Discrimination** *Rules 15(c), 15(c)(2):* When a claim of discrimination is made in a motion or brief, the respondent must now state, in a responsive motion or brief: whether the respondent concurs or disagrees with the petitioner's statement concerning discrimination and indicate whether or not the respondent believes that the court has jurisdiction over the petition for review, with reasons provided as necessary.